## Case No. 7,226.

### JARVIS v. CONNECTICUT MUT. LIFE INS. CO.

[8 Chi. Leg. News, 227; 5 Ins. Law J. 507; 6 Ins. Law J. 311.]

Circuit Court, N. D. Illinois. March, 1876.

R. L. Divine and Hunter & Page, for plaintiff.

Isham & Lincoln, for defendant.

HOPKINS, District Judge (charging jury). This is an action upon a life policy for $2,000 dated May, 1866, on the life of one Jarvis, issued by the defendant, payable to the plaintiff. He died December 4, 1871. The proof of death is admitted to have been made December 23d, 1871. This entitles the plaintiff to a verdict, unless it is shown that the deceased violated some of the conditions of the policy. The provisions claimed to have been broken are first, that the insured became intemperate so as to impair his health, and second, that the party came to his death by his own hand. The plaintiff has admitted that the insured came to his death by his own hand. This entitles the defendant to a verdict, unless the plaintiff has shown that the deceased was insane so as to be incapable of committing the act in the sense these words are used in the policy, that is to such an extent as to relieve the act of the character of self-destruction. The plaintiff on this point has the burden of proof upon him. I will read and adopt the charge of Judge Dillon, which has been approved by the supreme court, with reference to the meaning of these words in the policy, and as to what must be shown to avoid the act of self-destruction. "It is not every kind or degree of insanity which will so far excuse the party taking his own life, as to make the company insuring liable. To do this, the act of self-destruction must have been the consequence of the insanity, and the mind of the decedent must have been so far deranged as to have made him incapable of using a rational judgment in regard to the act which he was committing. If he was impelled to the act by an insane impulse, which the reason that was left him did not enable him to resist, or if his reasoning powers were so far overthrown by his mental condition that he could not exercise his reasoning faculties on the act he was about to do, the company is liable. On the other hand, there is no presumption of law, prima facie, or otherwise, that self-destruction arises from insanity; and if you believe from the evidence, that the decedent, although excited, or angry, or distressed in mind, formed the determination to take his own life, because in the exercise of his usual reasoning faculties. he preferred death to life, then the company is not liable, because he died by his own hand, within the meaning of the policy." The supreme court summed up the rule in this language: "We hold the rule on the question before us, to be this: If the assured, being in the possession of his ordinary reasoning faculties, from anger, pride, jealousy, or a desire to escape from the ills of life, intentionally takes his own life, the proviso attaches, and there can be no recovery. If the death is caused by the volun-

tary act of the assured, he knowing and intending that his death shall be the result of his act; but when his reasoning faculties are so impaired that he is not able to understand the moral character, the general nature, consequences and effect of the act he is about to commit, or when he is impelled thereto by an insane impulse which he has not the power to resist, such death is not within the contemplation of the parties to the contract, and the insurer is liable." This construction of these words in the policy, and the quantity of evidence to avoid them, is binding upon this court, and the testimony must be considered with reference to that construction.

If you find that the testimony brings the insured's condition of mind within this doctrine thus laid down by the supreme court, the defense of self-destruction is answered. Upon this point, you will look at the evidence as to his usual habits, his condition, his circumstances, and all the surroundings and influences tending to such an act, and bearing upon his mental condition, and determine whether, or not, the insured was in the condition mentioned in the foregoing instructions. If he was, then he was not morally responsible for the act, and, in a legal sense, there was no self-destruction. If he was in the enjoyment of his faculties to the extent hereinbefore mentioned, the condition of the policy was broken, and the defendant is not liable.

There is still the question of intemperance. If you should find that the insured had impaired his health by intemperance, then the policy is void. This is sufficient of itself to defeat a recovery. He agreed that he should not impair his health by intemperance, and if he broke that provision, he cannot recover. If the evidence shows you that such is the case, the policy is void; but the burden of proof upon that point, is upon the defendant. The defendant must show, to your satisfaction, that after the policy was issued, the insured did impair his health by habits of intemperance. If the evidence shows that, it avoids the policy. You must find it, however, upon the evidence. If you should find that his intemperance produced the mental condition relied upon to avoid the effect of the self-destruction clause in the policy, then the plaintiff cannot recover. If the insanity was produced by habits prohibited by the policy, then it cannot be set up in avoidance of a breach of another condition. Intemperance avoids the policy, and if intemperance produced the insanity, this insanity cannot be set up as an excuse for the violation of the self-destruction clause. The weight of the testimony is for you to settle, and it is for you to draw conclusions from it. Opinions of witnesses are admissible in some cases, and when admissible, it is the duty of the jury to give them such weight as they deem them entitled to. They are not absolutely binding upon you, but you may reject or receive them, as you think them worthy. If you find for the plaintiff, you will find the sum mentioned in the policy, with interest at six per cent., after ninety days from December 23, 1871,—that is, from March 23, 1872.

In this case, the jury failed to agree.